IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| A.G.; et al., | 3:13-cv-1051-AC |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| THE OREGON DEPARTMENT OF HUMAN SERVICES ("DHS"), a government agency; et al., | |
| Defendants. | |

ACOSTA, Magistrate Judge

*Introduction*

Plaintiffs are minor children who allege they suffered sexual abuse by defendant James Earl Mooney, a state-certified foster parent, at various times between 2007 and 2011. At the outset of discovery plaintiffs served a 319-paragraph request for production calling for myriad categories of documents, much of which defendants claim is privileged, confidential, or private, and thus appropriately subject to a protective order. Plaintiffs respond that a protective order is not appropriate or necessary, because defendants have not shown the requisite "good cause" and because defendants' concerns can be adequately addressed by redaction of sensitive information. Both sides filed motions to resolve their dispute. *See* State Defendants' Motion for Protective Order (Dkt. No. 57) and Plaintiff's Motion to Compel (Dkt. No. 65).

The court grants in part and denies in part both motions, in the ways and for the reasons detailed below.

Page 1 - OPINION AND ORDER

*Background*

The facts relevant to the parties' respective motions are summarized from plaintiffs' Amended Complaint. Plaintiffs are now and were, at all times relevant to the allegations in the Amended Complaint, minor children. Some or all of the plaintiffs suffer from developmental, emotional, or physical disabilities which render them especially vulnerable.

The Oregon Department of Human Services ("DHS") is the state agency responsible for delivering and administering programs and services regarding child adoption, child welfare, child protective services, and foster care in Oregon. DHS certifies individuals to serve as foster parents. DHS also is the state agency empowered to remove children from the custody of their biological parents and to place them in foster homes.

In February 2007, DHS certified Mooney and his wife to be foster parents. Certification required the Mooneys to submit to a background check, undergo an assessment of their home environment, and demonstrate adequate financial resources to support their household independent of payments provided by DHS. The Mooneys were required to participate in orientation, education, and training intended to equip them to competently and safely serve as foster parents. While serving as foster parents, the Mooneys were expected to work closely with DHS in all matters pertaining to the care of the children placed in the Mooneys' care, and were required to follow all DHS regulations establishing the requirements for the care of those children. These requirements included regularly consulting with the children's caseworkers, allowing unscheduled in-home inspections, obtaining approval for a child's extended absence from the home, using approved respite care, following proper disciplinary practices, and reporting known or expected abuse of the children.

Between February 2007 and May 2011, DHS placed each of the plaintiffs in the Mooneys'

Page 2 - OPINION AND ORDER

care. While in the Mooneys' care, Mooney sexually abused each of the plaintiffs and did so on multiple occasions. In April 2007, plaintiff A.G. reported Mooney's abuse. DHS learned of the report and in May 2007 it instructed Mooney to vacate the home in which he and his wife provided foster care. DHS also began an investigation into Mooney's conduct. In June 2007 Mooney confessed to law enforcement authorities that between 2007 and 2011 he committed multiple acts of sexual abuse against the children in his care and children in the care of other foster parents. In January 2012 Mooney was sentenced to prison on charges of sexual abuse against one of the plaintiffs.

Plaintiffs allege DHS knew or should have known of Mooney's behavior toward them. They fault the DHS caseworkers' supervision and monitoring of Mooney's behavior and failure to recognize signs of abuse plaintiffs exhibited. Plaintiffs also challenge every aspect of DHS's certification and supervision processes that led to Mooney becoming a foster parent and remaining a foster parent for so many years. Plaintiffs assert that DHS also knew from prior experience that children with disabilities such as theirs made them especially vulnerable to sexual abuse, thus giving DHS additional reason to have recognized plaintiffs' signs of sexual abuse.

*Standards*

The starting point is Federal Rule of Civil Procedure 26. Under Rule 26©, a court may for "good cause" issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The protective order may include one or more of the following provisions:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

© prescribing a discovery method other than the one selected by the party seeking discovery;

Page 3 - OPINION AND ORDER

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

FED. R. CIV. P. 26(c)(1)(A)-(H). This court's local rules describe the showing required to obtain a protective order:

**LR 26-4 Motions for Protective Orders**

A party or person asserting there is good cause for the Court to make an order that would limit access to discovery materials not filed with the Court, or would authorize a party or person to file any materials with the Court under seal, must show with respect to each particular material or category of materials that specific prejudice or harm will result if no order is granted. The showing must be sufficiently detailed to permit the Court in its good cause examination to identify specific factors supporting entry of the order sought. Where the order sought would authorize a party to file materials under seal, the showing also must articulate why, as an alternative to filing under seal, the information sought to be protected could not be redacted. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the requirements of this rule. The showing must be made even if the other party stipulates to the entry of the order.

United States District Court for Oregon Local Rules ("LR"), Rule 26-4.

Ninth Circuit case law has clearly explained and often applied Rule 26(c)'s requirements. To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance by demonstrating harm or prejudice that will result from the discovery. FED. R. CIV. P. 26(c)(1); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–1211 (9th Cir. 2002). Generally, a party seeking a protective order must meet a "heavy burden" to show why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Page 4 - OPINION AND ORDER

The court must identify and discuss the factors it considered when determining whether the party seeking the protective order has "good cause." *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Courts are given broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

The "good cause" standard will suffice to seal documents produced in discovery. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (citing FRCP 26©). This is because " '[P]rivate materials unearthed during discovery' are not part of the judicial record." *Id.* See also *Pintos v. Pacific Creditors Association*, 504 F.3d 792, 801 (9th Cir. 2007) (quoting *Kamakana* for the same proposition). In deciding whether to seal a particular document, the court must provide a sufficient explanation of its reasoning and the factors it considered. *Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118, 1121 (D. Or. 2003).

*Discussion*

I. Preliminary Observations.

The court first addresses overarching points that establish relevant context for the resolution of the parties' two major discovery disputes. The first dispute is whether and in what form a protective order should enter protecting the materials produced in discovery. The second dispute is over what materials defendants must produce in response to plaintiffs' request for production. The two disputes are independent of one another, except that a denial of a protective order entirely or with respect to specific documents or groups of documents will require defendants to extensively redact a large percentage of the materials to be produced.

First, the claims alleged in plaintiffs' Amended Complaint and the defenses asserted in the defendants' Answer control the scope of discovery. As Federal Rule of Civil Procedure 26(b)(1)

Page 5 - OPINION AND ORDER

dictates, the scope of discovery in a case is limited to those matters "relevant to any party's claim or defense[.]" The rule makes clear that relevancy controls the court's determination of which documents defendants must produce in response to plaintiffs' request for production.

Here, plaintiffs assert claims of deprivation of their civil rights in violation of federal statute, abuse of a vulnerable person in violation of state statute, and two negligence theories based on state common law. Each of these claims is developed in extensive detail in the 73-page Amended Complaint, but each claim arises from three essential and straightforward factual premises: Mooney sexually abused each of the plaintiffs at various times between 2007 and 2011 when they were in his foster care, DHS and the DHS employee-defendants knew or should have known of Mooney's sexually abusive conduct toward the plaintiffs, and DHS wrongly certified Mooney to serve as a foster parent. Because plaintiffs' claims focus on Mooney and the DHS employee-defendants, the scope of discovery necessarily is defined by from that focus.[1]

Second, the parties named as plaintiffs and defendants in the Amended Complaint also determines the scope of discovery, and not all "Doe" parties named in the Amended Complaint are proper parties. Plaintiffs' Amended Complaint, as did their original Complaint, purports to name "Jane and John Does 1-50" as plaintiffs. "The normal presumption in litigation is that parties must use their real names," unless revealing a plaintiff's identity will result in harm sufficiently severe to outweigh the public interest in open courts. *Doe, et al. v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042-43 (9th Cir. Hawai'I 2010). Plaintiffs' Doe pleading format does not fulfill this purpose, because they use their initials to protect their identities as minors, a

---

[1] Defendants' Answer lists affirmative defenses that raise legal defenses and challenges, rather than fact-based challenges, to plaintiffs' claims, and do not affect the scope of discovery at this time.

Page 6 - OPINION AND ORDER

practice expressly authorized for parties who are minors. FED. R. CIV. P. 5.2(a)(3). In reality, the Doe plaintiffs are not known persons whose identities must be protected but are instead, according to plaintiffs' briefing, are other minors whom Mooney might abused and whose identities are yet to be determined. As the *Kamehameha* case demonstrates, the purpose of allowing Doe plaintiffs is to protect a known plaintiff from an identified harm or threatened harm, not to serve as a placeholder for possible additional plaintiffs or to expand the scope of discovery. Thus, the Doe plaintiffs are not relevant to defining the scope of discovery.

Plaintiffs' Amended Complaint also names Doe defendants who, plaintiffs allege, are unknown to them at this time. Use of Doe defendant pleading in federal question cases has been permitted when a plaintiff is able to describe a defendant by appearance or title, but does not know the defendant's name. *See, e.g., Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980) (acknowledging that although use of Doe defendants is "disfavored," a plaintiff should be given an opportunity through discovery to identify unknown defendants where the identity of alleged defendants will not be known before the complaint is filed); *Bryant v. Ford Motor Co.*, 832 F.2d 1080, 1096 n.19 (9th Cir.1987) (Kozinski, J., dissenting) ("It is important to distinguish suing fictitious parties from real parties sued under a fictitious name. There may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name. Also, one may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly.") (citations omitted). Here, plaintiffs allege other, unknown DHS employees certified Mooney as a foster parent, monitored his compliance with DHS requirements, or supervised his certification and ongoing compliance with DHS requirements. Amended Complaint ¶¶ 15-18. Plaintiffs are permitted to proceed against these unknown defendants as Doe defendants, and their presence as parties in part defines the scope of discovery in this case.

Third, the documents for which defendants seek a protective order are discovery documents, not documents filed with the court. This status controls the standard applicable to defendants' protective order request as well as the burden defendants must meet to successfully support that request. As the cases cited in the "Standards" section of this opinion demonstrate, protection of discovery materials must meet the "good cause" standard only. Different standards apply to the court's decision to allow collateral litigants access to discovery documents or allow third parties access to documents filed with the court. *See, e.g., Foltz*, 331 F.3d at 1131-32 (Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation;" court must determine relevancy of documents sought and balance opposing party's reliance on protective order against policy of access for collateral litigants). *Pintos*, 504 F.3d at 801 ("compelling reasons" standard applies to most judicial records).

Fourth, although DHS is a state agency and, thus, subject to Oregon's public records disclosure statute, ORS Chapter 192, that statute does not apply to production requests in litigation. *See Kamakana*, 447 F.3d at 1185 (analyzing assertion that Freedom of Information Act exemptions suffice as reason to seal documents, and concluding that documents exempt from disclosure under public records laws "are not automatically privileged in civil discovery"). DHS in several instances referred to the public records disclosure statute or objected to production based on the exemptions in that statute. The federal rules governing discovery, and the cases construing the application of those rules, control the court's determination of what document DHS must produce to plaintiffs.

Fifth, the court's ruling on defendants' motion for protective order resolves for now the confidentiality protection accorded certain of the disputed documents, as identified below. Documents covered under the court's protective order may later lose protected status if they are filed with the court, pursued as evidence by collateral litigants, or sought by a party or non-party after the

Page 8 - OPINION AND ORDER

case concludes, as noted above. Thus, the court reserves ruling on any such subsequent requests and will do so independent of the decisions contained in this opinion and order.

II. Protective Order.

A protective order is warranted. Plaintiffs contend defendants have not met their "good cause" burden, observing that they have not articulated the specific harm disclosure would create, or matched to specific documents or groups of documents the particular federal and state laws defendants cite to support their confidentiality concerns. Plaintiffs also point out that many of the plaintiffs have submitted waivers regarding their respective files. Plaintiffs also suggest that in any event defendants, through redaction of the requested records, can adequately address confidentiality concerns.

First, the harm of disclosing sensitive information contained in the bulk of the records requested is evident by the nature of the records plaintiffs seek. Plaintiffs' 319-paragraph request for production targets documents pertaining not only to themselves but to other minors in the care, custody, or control of DHS, with relatively few exceptions. The documents also contain in various combinations information about the minors' family, social, educational, and medical backgrounds; information about foster parents and siblings; and information about sexual abuse, mental health issues, and similar sensitive information pertaining to plaintiffs and other minors. Defendants represent that many of the documents also contain information about the minors' biological, adoptive, and foster parents and siblings.

It is important to distinguish between broad allegations of unspecified harm, as plaintiffs content defendants argue here, and identified harm that applies to a broad array of documents, which defendants actually argue. The descriptions of the scores of document groups plaintiffs seek –for example, background investigations of foster parents (¶ 24), names and addresses of DHS

Page 9 - OPINION AND ORDER

caseworkers and supervisors (¶¶ 73-75; 133; 261), documents regarding all children placed in the Mooneys' care (¶ 202), investigative information regarding sexual abuse of any child in the Mooneys' care (¶¶ 284-296) – themselves prove the information contained in the documents should be protected from disclosure. It requires no supposition to understand the harm that would result from disclosure of this and similar information contained in DHS's files.

Second, redaction would be unduly burdensome and inadequate to protect the confidential information contained in the DHS documents. At hearing defendants represented that they had already collected and were prepared to immediately produce to plaintiffs 24 CDs containing almost 50,000 unredacted documents, and that the final number of responsive documents potentially would approach 100,000 documents. Reviewing each document to determine which information should be redacted, coupled with the time necessary to perform the redaction, would both impose an undue burden on defendants and create an unnecessary and lengthy delay in producing the documents plaintiffs requested. In addition, redaction of so many documents containing so much confidential information would create a high risk that confidential or sensitive information would erroneously be disclosed. In contrast, entering a protective order during discovery is the most efficient and effective method of getting discovery to plaintiffs, does not detrimentally affect plaintiffs' ability to prosecute the claims in their Amended Complaint, and protects the privacy and confidentiality of those whose information is contained in DHS's documents.

In short, a balancing of interests justifies entry of a protective order in this case. Accordingly, filed with this opinion and order is the form of protective order the parties in this case shall use to cover the documents identified in Section III, below.

\\\\\

III. Motion to Compel.

Defendants did not object to producing documents in response to many of the paragraphs in plaintiffs' request for production or did not object so long as a protective order covered the documents requested. Defendants did object to other paragraphs, and those objections, and the parties' respective arguments regarding them, were discussed at length during the hearing.

Accordingly, in subsection "A", below, the court lists the paragraphs to which defendants did not object, and indicates by asterisk those paragraphs which reference documents to which the protective order applies. Defendants may redact from documents listed in subsection "A" and not covered by the protective order information they deem confidential. In subsection "B", below, the court lists the paragraphs to which defendants made specific objections, indicates its ruling on those objections, and states whether or not the protective order applies to some or all of the documents in each paragraph or paragraph group. If any party requires clarity on any of the rulings described in subsection "B", that party may refer to the court's rulings documented in the hearing transcript.

A. *Unopposed Document Requests.*

| ¶¶12-15 | ¶58* | ¶76 | ¶¶142-202* |
| ¶27 | ¶¶59-61 | ¶77-80 | ¶¶232-234 |
| ¶¶31-37 | ¶¶62-64* | ¶¶83-84* | ¶¶235-293* |
| ¶¶44-49* | ¶65 | ¶¶95-97* | ¶¶294-304* |
| ¶¶51-54* | ¶¶68-70* | ¶¶124-133* | ¶¶305-309* |
| ¶¶55-57 | ¶71 | ¶134-135 | ¶¶312-313* |

B. *Opposed Document Requests.*

¶¶1-4:    Objections overruled. The protective order does **not** apply.

¶¶5-7:    Objections overruled. The protective order does **not** apply.

Page 11 - OPINION AND ORDER

¶¶8-11: Defendants agreed at the hearing to produce documents in response to paragraphs 8 and 11. Accordingly, defendants' objections are moot. Defendants' objections to paragraphs 9 and 10 are overruled in part and sustained in part, as follows: defendants shall produce any reports regarding problems accessing the FACIS data system experienced by caseworkers, certifiers, and supervisors between 2007 and 2011, regardless of the date on which the report was issued. The court defers ruling on whether the protective order applies to paragraphs 8-11.

¶16: Objections overruled in part and sustained in part. Defendants must produce documents explaining, describing, or interpreting "medically fragile" and how that term is to be applied in placing foster children with foster parents. The protective order does **not** apply.

¶17: Objections overruled. The protective order does **not** apply.

¶¶18-24: Objections overruled in part and sustained in part. Defendants must produce claims, letter demands, and lawsuit complaints, and the disposition of those claims, demands and lawsuits, regarding the Mooneys, the plaintiffs, and the caseworkers, certifiers, and supervisors involved with the Mooneys or the plaintiffs. The protective order does **not** apply.

¶¶25-26: Objections overruled. The protective order does **not** apply.

¶¶28-30: Objections overruled in part and sustained in part. Defendants shall produce all documents pertaining to any agreement, understanding, or arrangement between DHS and law enforcement authorities for the handling of media inquiries or press releases regarding the events giving rise to this lawsuit. The protective order does **not** apply.

¶38: Objections sustained.

¶39:   Objections sustained.

¶¶40-43:   Objections overruled in part and sustained in part. Defendants must produce all documents showing the method for calculating reimbursement amounts for each of the plaintiffs in this case. The protective order **applies**.

¶50:   Objections overruled in part and sustained in part. For current employees, defendants must produce the employee's name and title. For former employees, defendants must produce the employee's last known contact information. The protective order **applies**.

¶66:   Objections overruled. Defendants, at their option, shall produce for the period February 2007 through May 2011 either the raw data from which the turn-over rate of DHS Marion County Office caseworkers, certifiers, supervisors and managers can be calculated, or a summary showing the turn-over rate. The protective order **applies** to the raw data but does **not** apply to the summary.

¶67:   Objections overruled in part and sustained in part. Defendants are not required to produce grievances or grievance files. Defendants shall produce all written complaints or concerns raised in any other form by caseworkers, certifiers, and supervisors regarding their ability to safely or adequately perform their duties due to caseload or resources. The protective order does **not** apply.

¶72:   *See* ruling on ¶67.

¶¶73-75:   *See* ruling on ¶50.

¶¶81-82:   *See* ruling on ¶67.

¶¶87-88:   *See* ruling on ¶67.

¶¶89:   Objections overruled in part and sustained in part. Defendants shall produce all documents regarding the Mooneys as adoptive parents. The protective order **applies**.

Page 13 - OPINION AND ORDER

¶¶90-92:    Documents and information regarding DHS employee ratios shall be produced in accordance with ¶66. The protective order **applies** to the raw data but does **not** apply to the summaries.

¶¶93-94:    *See* ruling on ¶67.

¶98:    The court **defers** ruling on defendants' objections pending discovery.

¶¶99-102:    Objections overruled, with leave to defendants to reassert during discovery. The protective order **applies**.

¶103:    Objections sustained.

¶¶104-108:    Objections sustained.

¶¶109-117:    Objections overruled in part and sustained in part. Defendants shall produce documents pertaining only to those foster parents who actually provided care to or respite care for children in the Mooneys' care. The protective order **applies**.

¶¶118-123:    Objections overruled in part and sustained in part. Defendants shall produce statistical data showing the number of placements between February 2007 and May 2011 in Marion County of children considered "medically fragile" or having "special needs." The protective order does **not** apply.

¶¶140-141:    Objections overruled in part and sustained in part. Defendants shall produce all policies, procedures, protocols, guidelines, and similar documents pertaining to certification and recertification of foster parents, existing as of November 2006, and subsequent iterations of these documents. The protective order does **not** apply.

¶¶203-231:    Objections overruled in part and sustained in part. Defendants shall produce documents pertaining to the Mooneys, the plaintiffs, and children placed in the Mooneys' care between and including February 2007 to May 2011. The protective order **applies**.

Page 14 - OPINION AND ORDER

¶¶316-317:   Objections overruled. DHS must produce all non-privileged documents in the possession, custody, or control of the Department of Administrative Services ("DAS"), and must produce a privilege log for all DAS documents withheld on claim of privilege. The protective order **applies** to witness interviews and statements, and to DHS's privilege log.

C. *Time for Production.*

Defendants shall produce those documents already collected and which this order requires be produced within fourteen (14) days of the date of entry of this order. Defendants shall produce those documents not yet collected and which this order requires be produced within thirty (30) days of the date of this order.

IT IS SO ORDERED.

DATED this 28th day of January, 2014.

_____
JOHN V. ACOSTA
United States Magistrate Judge

Page 15 - OPINION AND ORDER