UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

A.G. et al.,　　　　　　　　　　　　　　　　　　　　　Case No.:3:13-cv-01051-AC

　　　　　　　Plaintiffs,　　　　　　　　　　　　　　　OPINION AND ORDER

　　v.

TANYA BURROUGHS, et al.,

　　　　　　　Defendants.
_____

ACOSTA, MAGISTRATE JUDGE:

*Introduction*

　　Plaintiffs A.G. and fifty-eight named and unnamed plaintiffs ("Plaintiffs") have brought this suit against James Earl Mooney ("Mooney"), the Oregon Department of Human Services ("DHS"), and numerous DHS employees for violations of 42 U.S.C. § 1983 and state tort laws. Plaintiffs now seek to compel the Oregon Employment Department ("OED"), a state agency not party to this action, to produce discoverable information regarding Mooney's prior applications for unemployment compensation. Although the OED's resistance to the subpoena is consistent with

state and federal law, the court now orders production of the documents Plaintiffs seek.

*Factual Background*

The facts relevant to Plaintiffs' motion are summarized from Plaintiffs' Amended Complaint. Plaintiffs are now and were, at all times relevant to the allegations in the Amended Complaint, minor children. Some or all of the Plaintiffs suffer from developmental, emotional, or physical disabilities which render them especially vulnerable.

Oregon DHS is the state agency responsible for delivering and administering programs and services regarding child adoption, child welfare, child protective services, and foster care in Oregon. DHS certifies individuals to serve as foster parents. DHS also is the state agency empowered to remove children from the custody of their biological parents and to place them in foster homes.

In February 2007, DHS certified Mooney and his wife ("the Mooneys") to be foster parents. Certification required the Mooneys to submit to a background check, undergo an assessment of their home environment, and demonstrate adequate financial resources to support their household independent of payments provided by DHS. The Mooneys were required to participate in orientation, education, and training intended to equip them to competently and safely serve as foster parents. While serving as foster parents, the Mooneys were expected to work closely with DHS in all matters pertaining the care of the children placed in the Mooneys' care, and were required to follow all DHS regulations establishing the requirements for the care of those children. These requirements included regularly consulting with the children's caseworkers, allowing unscheduled in-home inspections, obtaining approval for a child's extended absence from the home, using approved respite care, following proper disciplinary practices, and reporting known or expected abuse of the children.

Between February 2007 and May 2011, DHS placed each of them in the Mooneys' care. Plaintiffs allege that while in the Mooneys' care, Mooney sexually abused each of the Plaintiffs and did so on multiple occasions. In April 2011, Plaintiff A.G. reported Mooney's abuse. DHS learned of the report and in May 2011 it instructed Mooney to vacate the home in which he and his wife provided foster care. DHS also began an investigation into Mooney's conduct. In June 2011, Mooney confessed to law enforcement authorities that, between 2007 and 2011, he committed multiple acts of sexual abuse against the children in his care and children in the care of other foster parents. In January 2012, Mooney was sentenced to prison on charges of sexual abuse against one of the Plaintiffs.

Plaintiffs allege DHS knew or should have known of Mooney's behavior toward them, and was negligent *per se* in certifying and maintaining the Mooneys as DHS-certified foster parents. Plaintiffs also challenge every aspect of DHS's certification and supervision process that led to Mooney becoming a foster parent for so many years. Plaintiffs assert that DHS also knew from prior experience that children with disabilities such as theirs made them especially vulnerable to sexual abuse, thus giving DHS additional reason to have recognized Plaintiffs' symptoms of sexual abuse.

*Procedural Background*

In its January 28, 2014, Opinion and Order, the court granted in-part and denied in-part Plaintiffs' motion to compel production and defendants' motion for a protective order. (Dkt. No. 86.) The protective order (Dkt. No. 84), which binds only the parties to this case, provides that, "unless otherwise ordered by this court," the parties may label certain discovery materials "confidential." Upon designating discovery materials "confidential" those materials "shall be restricted solely to the litigation of this case and shall not be used by any party for any business,

commercial, or competitive purpose." (Dkt. No. 84 at 2.)

In February 2014, in an attempt to obtain documents relevant to their claims, Plaintiffs served the Oregon Employment Department ("OED") with a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" ("Subpoena") authorized by the Clerk of the Court. The Subpoena requested production or inspection of the following:

> 1. All unemployment applications, forms and references provided by, or submitted on behalf of, James Earl Mooney (D.O.B. 6/6/1984) from approximately 2008-2011.
>
> 2. All communications, contacts and corresponded between [the OED] and any employee or representative of the Oregon Department of Human Services, including Judi K. Martin, between approximately 2008-2010 that pertain in any way to James Earl Mooney.
>
> 3. All files and records that indicate unemployment benefits paid to, or on behalf of, James Earl Mooney between approximately 2008-2011.

(Rizzo Decl. Ex. 1 at 4.) In two letters sent to Plaintiffs' counsel, the OED stated its intention to not comply with the subpoena because producing the documents would violate state and federal law. (Rizzo Decl. Exs. 2-3.) Plaintiffs now have filed a motion to compel, and request the court compel the OED to produce the documents at issue.

*Legal Standard*

Federal Rule of Civil Procedure 37 ("Rule 37")which governs motions to compel, does not specifically mention a party moving to compel compliance with a subpoena. However, prior to 1980, the contempt provision of Rule 37(e) allowed the court to find in contempt parties who fail to comply with properly issued subpoenas. In 1980, this provision was amended out of Rule 37 because it was duplicitous of the sanctions provision of Rule 45. Therefore, the court looks to FRCP 45 for guidance on how to respond to the OED's noncompliance.

Federal Rule of Civil Procedure 45 ("Rule 45") provides that the party to a civil action may serve a non-party with a subpoena requiring that non-party to produce documents in its possession. However, "[o]n timely motion, the court . . . must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45(d)(3). In addition, the subpoenaed party may withhold documents that party is otherwise required to produce if the documents are "privileged or subject to protection as trial-preparation material" so long as the subpoenaed party: (1) expressly claims protection and (2) "describes the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2).

*Discussion*

The OED claims that unemployment compensation information ("UC information") relating to Mooney is confidential and, according to both state and federal law, may not be released to non-governmental entities. Further, even if it *may* release the information under certain circumstances, the OED argues that federal law requires it to resist attempts to produce UC information when not explicitly ordered to release it. Plaintiffs argue that, because of the court's protective order, any UC information produced by the OED will remain confidential, and that the laws governing release of UC information allow production given the facts of this case. The court must now decide two questions: First, whether the OED is lawfully resisting Plaintiffs' subpoena for documents, and second, whether the court should nonetheless grant Plaintiffs' motion to compel because the documents it seeks are nonprivileged discoverable material.

I. The OED's Objection to the Subpoena.

The OED claims that its objection to Plaintiffs' subpoena is wholly consistent with state and federal law. The Plaintiffs contend that the OED misinterprets and mischaracterizes the statutes and regulations at issue. Plainiffs urge the court to grant its motion to compel, and require the OED to produce UC information pertaining to Mooney.

   *A. Federal Law*

Section 303(a)(1) of the Social Security Act provides that each state must enact statutes to ensure full and efficient payment of unemployment compensation. Further, that regulation requires that these state statutes "must include provision for maintaining the confidentiality of any UC information which reveals the name or any identifying particular about any individual or any past or present employer or employing unit . . . ." 20 C.F.R. § 603.4(b). "Disclosure of confidential UC information is permissible under the exceptions in paragraphs (a) through (g) . . . only if authorized by State law and if such disclosure does not interfere with the efficient administration of the State UC law."[1] If, however, disclosure of UC information is sought pursuant to subsection (h), which provides that "[d]isclosure of confidential UC information in response to a court order or to an official with subpoena authority is permissible as specified in § 603.7(b)," the state agency may disclose the information even if doing so would violate state law. None of the exceptions in subsections (a) through (g) allow disclosure given the facts of this case, so if disclosure is

---

[1]Exceptions (a)–(g) are: (a) if the UC information is in the public domain; (b) if it is released pursuant to the unemployment compensation appeals process; (c) if it is released to the individual or employer who are the subject of the UC information; (d) if the agency obtains the informed consent of the individual/employee; (e) if it is disclosed to "a public official for use in the performance of his or her official duties;" (f) disclosure to an agent or contractor of a public official to whom disclosure is permissible under section (e); and (g) disclosure to the Bureau of Labor Statistics in order to compile data. 20 C.F.R. § 603.5

permissible it must be under subsection (h). Because disclosure under subsection (h) need not be consistent with state law, the Oregon state statutes governing release of UC information are irrelevant to the court's analysis, and are discussed below only to dispose of an argument raised in Plaintiffs' brief.

If the state agency administering unemployment compensation is served with a subpoena for production of UC information, it "must file and diligently pursue a motion to quash the subpoena . . . if other means of avoiding the disclosure . . . are not successful or if the court has not already ruled on the disclosure. Only if such motion is denied . . . may the requested confidential UC information be disclosed . . . ." 20 C.F.R. § 603.7(a). Section 603.7(b) lays out two exceptions to the state agency's "duty to resist:"

> (b) Exceptions. The requirement of paragraph (a) of this section to move to quash subpoenas shall not be applicable, so that disclosure is permissible, where–
>
> > (1) Court decision–a subpoena or other compulsory legal process has been served and a court has previously issued a binding precedential decision that requires disclosures of this type, or a well-established pattern of prior court decisions have required disclosures of this type, or
> >
> > (2) Official with subpoena authority–Confidential UC information has been subpoenaed, by a local, state or Federal governmental official, other than a clerk of court on behalf of a litigant, with authority to obtain such information by subpoena under State or Federal law. The State or State UC agency may choose to disclose such confidential information to these officials without the actual issuance of a subpoena.

According to §§ 603.4-603.7, the OED is required to disclose the documents at issue only if there is a court order binding the OED to do so. Plaintiffs argue that the protective order binds the OED, and compels it to comply with the subpoena. Plaintiffs' argument rests primarily on language Defendant used in its motion for protective order. In that motion, the Defendant explained that a protective order "serves two important purposes: 1) it acts as *the court's order to the State of*

*Oregon* that records be produced; and 2) it guides and limits the parties concerning the use of the records, which *keep the confidences and privileges intact to the greatest extent possible*, thus giving *the State* protection from claims that records were voluntarily released." (Pl.'s Mem. in Supp. at 7) (quoting defendant's motion for protective order) (emphasis original.)  According to Plaintiffs, because defendant characterized the protective order as applying to "the state of Oregon," it should apply to all agencies of the state of Oregon.

The court disagrees, and concludes the protective order does not bind the OED.  As the OED points out in its brief, both state and federal caselaw contradict Plaintiff's argument.  First, the Supreme Court held in *Lujan v. Defenders of Wildlife*, that relief granted against the head of one federal administrative agency does not bind other federal agencies.  504 U.S. 555, 568-69 (1992).  Second, the Oregon Supreme Court has held that "the government, while acting through one agency, is not bound by the actions of another agency which performs a different function . . . ."  *State Highway Comm'n v. Aderegg*, 241 Or. 31, 36 (1965).  Thus, although the court's protective order and previous order to compel bound DHS to comply with the court's commands, OED was not bound by that ruling because it is not a party to this case.

Because OED is not bound by the court's protective order, and there is no other order governing the documents sought by Plaintiffs, § 603.7(a) clearly commands OED to resist any and all subpoenas for confidential documents. Further, because §603.7(b) specifically exempts "a clerk of court on behalf of a litigant" from the category of persons with subpoena authority whom the OED must comply with, OED is well within its statutory rights to resist production of the UC information.  Currently, the OED's resistance to producing the UC information is fully consistent with federal regulations.

*B. State Law*

Oregon state law also does not permit OED to disclose the documents sought. OR. REV. STAT. § 657.665 was enacted to ensure UC information remained confidential pursuant to 20 C.F.R. § 603.4. Section 657.665 provides that all UC information in the OED's records are "confidential and for the exclusive use and information of the Director of the Employment Department in administering" UC programs. OR. REV. STAT. § 657.665(1)(a). It further commands that UC information not "be used in any court action or in any proceeding pending in the court unless the director or the state is a party to the action or proceeding . . . ." OR. REV. STAT. § 657.665(1)(b). The remainder of section 657.665 articulates the boundaries on the OED's authority to disclose UC information. None of it permits disclosure of UC information to a party to a civil action without waiver by the employee.[2]

Plaintiffs argue that subsection (1)(b) permits the OED to disclose the information it seeks because the state is a party to this action. The OED points out that subsection (1)(b) provides only that confidential UC information may be "used in court" when the state is a party to a court matter, whereas subsections (2) through (4) deal specifically with when UC information may be "disclosed." The court agrees with the OED. If the legislature had intended to require the OED to disclose UC information pursuant to discovery in any case where the state was a party, it would have drafted subsection (1)(b) to include the word "disclose" instead of "use." This interpretation is fully consistent with the federal scheme, which allows disclosure pursuant to a court order. Under subsection (1)(b), if disclosure is ordered by a court, and thus permissible under federal regulations,

---

[2]In fact, the only parties allowed access to UC information under § 657.665 are (1) claimants or legal representatives in an unemployment insurance claim or (2) federal and state governmental agencies in the performance of those agencies' official duties.

that information may only be "used" (as admissible evidence) in a court proceeding if the state or director of the OED is a party to the matter.

Therefore, the court concludes that the OED has not misinterpreted the law governing UC information disclosure, and is fulfilling its statutory and regulatory duty to resist all subpoenas for confidential UC information. Regardless, the statutory and regulatory framework discussed above bears only on the duties and responsibilities of the agency administering unemployment compensation. It does not constrain this court from ordering the production of non-privileged discoverable material. The court now turns to the question of whether it should nonetheless order the OED to produce the documents Plaintiffs seek.

II. Relevant Discoverable Material

Federal Rule of Civil Procedure 26 governs the scope of discovery, and allows parties to discover "any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." FED. R. EVID. 401. A party may seek relevant evidence from a non-party through a subpoena. FED. R. CIV. P. 45; *Webster v. Nw Cancer Specialists, PC*, No. 3:11-cv-01543-MO, 2012 WL 2861664, at *1 (D. Or. July 7, 2012). The individual challenging performance under the subpoena bears the burden to demonstrate privilege or protection. *Id*.

The information Plaintiffs seek is relevant to both of their claims against DHS. First, it is relevant to Plaintiffs' claims that DHS was negligent per se in certifying the Mooneys as certified foster parents. Part of the certification process requires DHS to ensure the putative foster parents have adequate financial resources to support the household independent of the monthly DHS

stipend. Evidence that Mooney did not have adequate financial resources is relevant to the question whether DHS fulfilled its duty to diligently investigate Mooney's suitability as a foster parent prior to certifying him because, Plaintiffs contend, inadequate financed resources at any time requires DHS to de-certify the foster parents and remove the children from the home. Second, if DHS failed its duty to adequately investigate the Mooneys, that fact is likely relevant and probative to whether DHS violated Plaintiffs' rights under § 1983 and the United States Constitution. Therefore, the information sought by Plaintiffs is relevant to their claims and discoverable unless privileged or protected.

### A. Applicable law

Before analyzing the merits of whether the UC information Plaintiffs seek is exempt from discovery, the court must first determine the applicable law. "Where there are federal question clams and pendant state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). The court has jurisdiction over this case pursuant to its federal questions jurisdiction, as Plaintiffs allege violations of 42 U.S.C. § 1983, and supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate Plaintiff's state law claims. Because the court's primary basis for jurisdiction is a federal question, federal privilege and protection law govern the OED's objection to Plaintiffs' subpoena. *Id*.

### B. Federal Privilege for Confidential UC Information

Neither Plaintiffs nor the OED claim that under state or federal law there is a presently recognized evidentiary privilege against disclosure of information relating to unemployment compensation. However, the OED urged the court to recognize a limited privilege against disclosing UC information to protect the relationship, and ensure candor in communications, between

employees, employers, and the OED. Plaintiffs disagree, and argue that, although federal and state law classify UC information as "confidential," it is not privileged or exempt from discovery.

The law of privilege and protection of otherwise discoverable material "is evolutionary," and the court may create a new privilege where a "public good transcending the normally predominant principle disfavoring testimonial privileges may justify such creation." *Id*. However, "evidentiary privileges in litigation are not favored." *Herbert v. Lando*, 441 U.S. 153, 175 (1979). The court should be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id*. *quoting Univ. Of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990).

In *Kelley v. Billings Clinic*, a court in the District of Montana faced similar circumstances as those now before the court. No. CV 12-74-BLG-SEH-CSO, 2013 WL 2422705, at *4-5 (D. Mont. June 3, 2013). There, the defendant to an employment action served the Montana Department of Labor ("DOL") with a subpoena for the plaintiff's UC applications. *Id*. at *1. The DOL filed a motion to quash the subpoena and argued that federal regulations and Montana statutes prohibited disclosure. *Id*. The court, in holding that the DOL did "not make a clear showing that the motion should be quashed," reasoned that the federal regulations and state statutes both contemplated that the UC information could and should be released in appropriate circumstances. *Id*. at *4. Further, because the plaintiff, who was the subject of the records, did not object to release, there was no obvious reason to prevent disclosure. *Id*. The court did, however, set strict limits on the defendant's ability to use the information as to ensure confidentiality and prevent misuse. *Id*. at *4-*5.

Similarly, the Oregon Court of Appeals has determined that confidential information is not the same as information privileged from discovery. *Kahn v. Pony Express Courier Corp*, 173 Or.

App. 127, 138-39 (2001). In *Kahn*, the defendants sought production of documents relating to the plaintiff from the State Office for Services to Children and Families ("SCF"). *Id*. at 130. The SCF refused, claiming that the documents were confidential and privileged under Oregon statutes. *Id*. The Oregon Court of Appeals rejected SCF's argument, and distinguished between statutes which classify certain information as confidential from statues which specifically create a privilege against discovery. The court reasoned:

> The fact that the records were confidential and not disclosable under ORS 409.225 does not, however, necessarily mean that they were privileged . . . . [T]hat ORS 409.225 provides for confidentiality and non-disclosure of SCF records without expressly providing that they are "privileged" suggests that the legislature did not intend from them to be privileged against discovery under ORCP 36 B.

*Id*. at 138-39. Thus, under Oregon law, information is privileged against discovery only if the legislature specifically makes information privileged by statute, as opposed to merely classifying it as "confidential."

The court concludes that the documents Plaintiffs seek from the OED are non-privileged, relevant, and discoverable, and the court orders the OED to disclose them pursuant to Plaintiffs' subpoena. The Federal Rules of Civil Procedure encourage liberal discovery, and the court has significant authority to determine the scope of discovery in cases before it. FED. R. CIV. P. 26, *Weaving v. City fo Hillsborough*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011) (citing *Hickman v. Taylor*, 329 U.S. 495, 505 (1947). Neither state nor federal law recognizes UC information as privileged from discovery, and the court declines the OED's request to create one here.

In addition, both federal and state interests weigh in favor of ordering disclosure. The federal government has an interest in vindicating alleged civil rights violations, and as previously

mentioned, the evidence at issue is relevant to whether DHS violated Plaintiffs' rights. *See Price v. County of San Diego*, 165 F.R.D. 614, 621 (S.D. Cal. 1996) ("Because of the liberal discovery policies of the Federal Rules of Civil Procedure, the importance placed upon the vindication of federal civil rights, and the protections against full-scale disclosure which may be imposed by the court (i.e. strict protective orders), the weighing of interests surrounding the assertion of an official information privilege is moderately tipped in favor of disclosure.") The State of Oregon's interest in vindicating Plaintiffs' rights under the state-law causes of action outweighs the minimal inconvenience faced by the OED in compiling and making available the subpoenaed documents.

*Conclusion*

For the aforementioned reasons, Plaintiffs' motion to compel (Dkt. No. 90) is GRANTED, and the Oregon Employment Department is hereby ordered to comply with Plaintiffs' February 21, 2014, subpoena. It is further ordered that all documents released pursuant to Plaintiffs' subpoena be subject to this court's January 28, 2014, protective order. However, because the OED advanced a good-faith argument against production, the court awards no fees or costs to either party in connection with this motion or the OED's resistance to Plaintiffs' subpoena.

IT IS SO ORDERED

This  7th  day of May, 2014.

                                                     /s/ John V. Acosta
                                                      JOHN V. ACOSTA
                                     United States Magistrate Judge